## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

---------------------------------------------------- :

IN RE YASMIN AND YAZ     :   **3:09-md-02100-DRH-CJP**

(DROSPIRENONE) MARKETING   :

SALES PRACTICES AND RELEVANT   :   **MDL No. 2100**

PRODUCTS LIABILITY LITIGATION   :

---------------------------------------------------- :

THERESE COSTA,     :   **Judge David R. Herndon**

    :

    **Plaintiff,**     :

    **v.**     :   **Civil Action No.: 3:11-cv-10082-DRH-PMF**

    :

BAYER HEALTHCARE     :

PHARMACEUTICALS, INC.,     :

BAYER HEALTHCARE, INC.,     :

BERLEX LABORATORIES     :

INTERNATIONAL, INC.,     :

BERLEX, INC.,     :

BAYER SCHERING PHARMA AG,     :

BAYER AG,     :

BARR PHARMACEUTICALS, INC.,     :

BARR LABORATORIES, INC.,     :

TEVA PHARMACEUTICAL     :

INDUSTRIES, LTD,     :

TEVA PHARMACEUTICALS USA, INC.,:

    :

    **Defendants.**     :

## COMPLAINT

Therese Costa, ("Plaintiff"), by and through counsel, files this Complaint against Defendants, and alleges the following:

## NATURE OF THE ACTION

1.     Plaintiff brings this action for negligence, strict product liability, breach of express and implied warranty, negligent misrepresentation and/or fraud, intentional and wanton conduct, false advertising, punitive damages and violation of the relevant Deceptive Trade Practices Act for damages suffered as a result of ingesting the combination oral contraceptives

Yasmin and Ocella, also known generically as drospirenone and ethinyl estradiol.  Specifically, Plaintiff suffered from cholelithiasis (otherwise known as "gallbladder disease"), requiring surgical removal of her gallbladder on or about May 10, 2010, as a result of her direct use of Yasmin and Ocella.

## PARTIES

2.      Plaintiff is a resident and citizen of Chesterbrook, (Chester County), Pennsylvania.

3.      Plaintiff was prescribed and ingested Yasmin and Ocella, and suffered from gallbladder disease requiring hospitalization and surgery on or about May 10, 2010.

4.      Plaintiff alleges an amount in controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation organized under the laws of the state of Delaware with its headquarters and principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.  Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and Berlex Laboratories.  Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin, Yaz and/or Ocella.  At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Pennsylvania by selling and distributing its products in Pennsylvania and engaged in substantial commerce and business activity in Chester County, Pennsylvania.

2

6.      Defendant Berlex Laboratories International, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey.  Berlex Laboratories International, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc.  Defendant Berlex Laboratories International, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yaz, Yasmin and/or Ocella.  At all relevant times, Defendant Berlex Laboratories International, Inc. conducted regular and sustained business in Pennsylvania by selling and distributing its products in Pennsylvania and engaged in substantial commerce and business activity in Chester County, Pennsylvania.

7.      Defendant Bayer Schering Pharma AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of Germany, having a principal place of business at Mullerstrasse 178, 13353 Berlin, Germany.

8.      Defendant Bayer Schering Pharma AG is a corporate successor to Schering AG.

9.      Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

10.     Defendant Bayer Schering Pharma AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

11.     Defendant Bayer Schering Pharma AG is the current owner of the patent(s) relating to the oral contraceptive, Yasmin.

12.     Defendant Bayer Schering Pharma AG is the current owner of the patent(s) relating to the oral contraceptive, Yaz.

13.     Defendant Bayer AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

14.     Defendant Bayer AG is the third largest pharmaceutical company in the world.

15.     Defendant Bayer AG is the parent/holding company of all other named Defendants.

16.     Defendant Bayer AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

17.     Defendants Bayer Pharmaceutical Corporation, Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories International, Inc., Berlex, Inc., Bayer Schering Pharma AG and Bayer AG are collectively referred to herein as "Defendants" or "Bayer Defendants."

18.     Defendant Barr Pharmaceuticals, Inc. is, and at all times relevant was, a corporation organized under the laws of the state of Utah having regularly established places of business at 400 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677; 109 Morgan Lane, Plainsboro, New Jersey 08536; and 265 Livingston Street, Northvale, New Jersey 07647.

19.     Defendant Barr Laboratories, Inc. is, and at all times relevant was, a corporation organized under the laws of the state of Delaware having regular and established places of business at One Belmont Avenue, Bala Cynwyd, Pennsylvania and 255 Summit Avenue, Montvale, New Jersey.

20.     Barr Laboratories, Inc. was a wholly owned subsidiary of Barr Pharmaceuticals, Inc.

21.     Defendants Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc. shall be referred to herein individually by name or collectively as "Barr" and/or the "Barr Defendants" or collectively with all Defendants as "Defendants."

22.     Defendant Teva Pharmaceutical Industries, Ltd. ("Teva Ltd.") is, and at all times relevant was, a pharmaceutical corporation organized under the laws of Israel and maintains its principal place of business at 5 Basel Street, Petah Tiqva 49131, Israel.

23.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is, and at all times relevant was, a pharmaceutical company organized under the laws of Delaware with its principal place of business located at 1090 Horsham Road, North Wales, Pennsylvania.

24.     Defendant Teva USA is an indirect wholly-owned subsidiary of Teva Ltd.

25.     Defendants Teva Ltd. and Teva USA, shall be referred to herein individually by name or collectively as "Teva" and/or the "Teva Defendants" or collectively with all Defendants as "Defendants."

26.     Teva is among the top 20 pharmaceutical companies and among the largest generic pharmaceutical companies in the world.

## JURISDICTION

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

28.     Filing of this action in the United States District Court for the Southern District of Illinois is proper, as it relates to the consolidated multi-district litigation "*In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practice and Products Liability Litigation,*" MDL Docket No. 2100, pending in this Court.

29.     Venue on remand is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district as Plaintiff was prescribed and used Yasmin and Ocella in this district, and Plaintiff resided in this district at the time of the injuries.

## FACTUAL BACKGROUND

30.     Plaintiff brings this case against Defendants for damages associated with Plaintiff's ingestion of the pharmaceutical drugs Yasmin and Ocella, oral contraceptives designed, manufactured, marketed and distributed by Defendants.  Specifically, Plaintiff suffered from various injuries, including but not limited to, cholelithiasis (otherwise known as "gallbladder disease"), requiring surgical removal of her gallbladder on or about May 10, 2010 as a direct result of her use of Yasmin and Ocella.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

31.     Yasmin and Yaz are birth control pills manufactured and marketed by Defendants.  They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.  Together these steroidal components work together in COCs to suppress ovulation, fertilization and implantation and thus prevent pregnancy.

32.     Yasmin and Yaz were approved by the Food and Drug Administration ("FDA") for marketing in 2001 and 2006, respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

33.     The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams

of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol.  Both products contain 3 milligrams of drospirenone.

34.     Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin and Yaz.

35.     Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

36.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

37.     During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

38.     Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

39.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

40.     On June 24, 2008, Barr Laboratories, Inc. ("Barr"), which is now a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva"), announced that it had entered into a supply and licensing agreement with the Bayer Defendants for the distribution of Ocella, which is the generic version of Yasmin.  According to Bayer's *Press Release*, under the terms of that agreement, Bayer supplies Ocella to Barr and Barr distributes Ocella in the United States under the Barr Laboratories' label.

41.     According to IMS sales data, Ocella had annual sales of approximately $170.2 million in the United States for the twelve months ending December 31, 2008.

42.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from, and potentially more dangerous than those of traditional second generation progestins.

43.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia (elevated blood potassium level) if the potassium levels become too high.

44.     Hyperkalemia can cause heart rhythm disturbances, such as extra systoles, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

45.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can

then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain and cause strokes.

46.     In addition, drospirenone can cause gallbladder disease and kidney stone formation which have been reported with the use of drospirenone in Yasmin, Yaz and Ocella. As a result, surgical intervention is often required.

47.     Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

### Establishing the dangers associated with "Fourth Generation" progestin

48.     In April 2002, the *British Medical Journal* reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

49.     In February 2003, a paper entitled "Thromboembolism Associated with the New Contraceptive Yasmin" was published in the *British Medical Journal* detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

50.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

51.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

52.     Some deaths reported occurred in women as young as 17 years old.

53.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin, Yaz or Ocella.

54.     Additionally, the FDA's adverse event data indicates staggering, serious adverse events that have been associated with Yasmin and Yaz, including but not limited to heart arrhythmias, electrolyte imbalance, hyponatremia, hyperkalemia, hyperkalemic arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, strokes, transient ischemic attacks, blood clot formation, gallbladder and kidney disease and/or sudden death.

55.     Two recent studies, dated August 2009, have found significantly increased risks associated with Yasmin and Yaz over other types of birth control pills.  The first assessed the risk of venous thrombosis in women who take hormonal contraception and was conducted on women ages 15-49 with no history of heart disease or any other malignant disease.  The study concludes "oral contraceptives with…drospirenone were associated with a significantly higher risk of venous thrombosis than oral contraceptives with evonorgestrel."  Lidegaard, et. al., *Hormonal contraception and risk of venous thromboembolism:  national follow-up study*, BMJ 2009;339;b2890.

56.     The second recent study found that Yasmin and Yaz users have twice the risk of a clotting event than users of birth control pills that contain levonorgestral.  Vandenbroucke, et. al. *The venous thrombotic risk of oral contraceptives, effects of estrogen dose and progestogen type: results of the MEGA case-control study*.  BMJ 2009;339;b2921.

57.     Despite the wealth of scientific evidence, Defendants have not only ignored the increased risk of the development of the aforementioned injuries associated with the use of Yasmin, Yaz and Ocella, but they have, through their marketing and advertising campaigns,

urged women to use Yasmin, Yaz or Ocella instead of birth control pills that present a safer alternative.

### Over-Promotion of Yasmin and Yaz

58.     Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

59.     Defendants market Yasmin and Yaz as effective for the treatment of premenstrual dysphoric disorder (hereinafter referred to as "PMDD"), premenstrual syndrome (hereinafter referred to as "PMS") and moderate acne, in addition to its FDA-approved use as an oral contraceptive.

60.     However, because Yasmin, Yaz and Ocella contain the fourth generation progestin drospirenone, which is a diuretic, these drugs present additional health risks not associated with other birth control pills.

61.     For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

62.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone[.]"

63.     The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

64.     More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD."

65.     Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

66.     In one of Defendants' commercials cited by the FDA, the song "*We're Not Gonna Take It*" plays in the background, while a series of young, fashionably dressed women kick away or puncture floating signs with labels saying "irritability" and "feeling anxious."  Meanwhile, a voiceover promotes Yaz as a "pill that goes beyond the rest, with benefits like the ability to maintain clear skin."

67.     Another one of the Defendants' commercials is set to the tune of "*Goodbye to You*" and shows a variety of women next to balloons marked "headaches," "ache," and "feeling anxious," which float away, presumably after taking Yaz.

68.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone … which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

69.     The FDA further warned the Defendants in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV ads misleadingly overstate the efficacy of the drug."

70.     Indeed, the FDA felt Defendants' over promotion of Yaz was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

71.     During 2008, when the ads in question were broadcast on television, Defendants' sales of Yaz in the United States increased to approximately $616 million, from about $262 million in 2007.  For 2008, Defendants' sales of Yasmin totaled about $382 million, or about 11 percent of the United States market.

72.     Defendants did not provide adequate warnings to doctors, the health care community and the public about the risk of serious adverse events that are described in this Complaint.

73.     As a result of Defendants' claims regarding the effectiveness and safety of Yasmin, Yaz and Ocella, Plaintiff's medical providers prescribed her and she ingested Yasmin and Ocella.

74.     As a result of the manufacture, marketing, advertising, promotion, distribution, and sale of Yasmin, Yaz and Ocella without adequate warnings about the risks of serious injuries, Plaintiff has sustained severe and permanent personal injuries.

75.     Had Plaintiff's medical providers known about the risks and dangers associated with Yasmin and Ocella, they would not have prescribed Yasmin or Ocella to Plaintiff and she would not have suffered injuries.

## Plaintiff's Use of Ocella and Yasmin and Resulting Injuries

76.     As a result of Defendants' claims regarding the efficacy and safety of Yasmin and Ocella, Plaintiff's medical providers prescribed and she began using Yasmin and Ocella, and suffered injuries, including gallbladder disease and had to undergo surgery to have her gallbladder removed.

77.     As a direct and proximate result of Plaintiff's use of Yasmin and Ocella, Plaintiff suffered from severe and personal injuries, including but not limited to, gallbladder disease, physical pain and mental anguish, diminished enjoyment of life, and medical, health, incidental and related expenses.

78.     Prior to Plaintiff's use of Yasmin and Ocella, Defendants knew or should have known that use of Yasmin and Ocella created a higher risk of gallbladder disease than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

79.     Therefore, at the time Plaintiff used Yasmin and Ocella, Defendants knew or should have known that the use of Yasmin and Ocella created an increased risk to consumers of serious personal injury, including deep vein thrombosis, pulmonary embolism, heart attacks, stroke, cholecystitis, cholelithiasis and even death.

80.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin and Ocella, Defendants failed to warn Plaintiff and/or her health care providers of said serious risks before she used the products.

81.     Had Plaintiff and/or her health care providers known of the risks and dangers associated with Yasmin and Ocella, she would not have used Yasmin and Ocella and would not have suffered from the injuries.

82.     As a direct and proximate result of her use of Yasmin and Ocella, Plaintiff suffered personal injuries, including but not limited to, conscious pain and suffering, as a result of gallbladder disease.

83.     As a direct and proximate result of Plaintiff's use of Yasmin and Ocella, Plaintiff has  suffered and will continue to suffer pecuniary losses.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY:  DEFECTIVE MANUFACTURING**

84.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

85.     Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of Yasmin and Ocella.

86.     The Yasmin and Ocella birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

87.     The Yasmin and Ocella birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specifications, posing a serious risk of injury and death.

88.     As a direct and proximate result of Plaintiff's use of Yasmin and Ocella as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm.

89.     As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

90.     Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY:  DESIGN DEFECT**

91.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

92.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin and Ocella.

93.     The Yasmin and Ocella birth control pills that Defendants manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce were expected to and did reach the consumer without any alterations or changes.

94.     The Yasmin and Ocella birth control pills manufactured and supplied by Defendants were defective in design or formulation in that, when they left the hands of the Defendants, the foreseeable risks of the products exceeded the benefits associated with their design or formulation, or they were more dangerous than an ordinary consumer would expect.

95.     The foreseeable risks associated with the design or formulation of Yasmin and Ocella include, but are not limited to, the fact that the designs or formulations of Yasmin and Ocella are more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

96.     As a direct and proximate result of Plaintiff's use of Yasmin and Ocella as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

97.     As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

98.     Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY:  DEFECT DUE TO INADEQUATE WARNING**

99.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

100.     The Yasmin and Ocella birth control pills manufactured and supplied by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the products created significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

101.     The Yasmin and Ocella birth control pills manufactured and supplied by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin and Ocella, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the products.

102.     As a direct and proximate result of Plaintiff's use of Yasmin and Ocella as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

103.    As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

104.    Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

**FOURTH CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY DUE TO NON CONFORMANCE WITH**
**REPRESENTATIONS**

105.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

106.    Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of Yasmin and Ocella and made representations regarding the character or quality of Yasmin and Ocella.

107.    The Yasmin and Ocella birth control pills manufactured and supplied by Defendants were defective in that, when they left the hands of Defendants, they did not conform to representations made by Defendants concerning the products.

108.    Plaintiff justifiably relied upon Defendants' representations regarding Yasmin and Ocella when she used Yasmin and Ocella.

109.    As a direct and proximate result of Plaintiff's use of Yasmin and Ocella and her reliance on Defendants' representations regarding the character and quality of Yasmin and Ocella, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

110.    As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

111.   Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

### FIFTH CAUSE OF ACTION
### NEGLIGENCE

112.   Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

113.   At all times relevant, Defendants had and continue to have a duty to exercise reasonable care in the design, manufacture, labeling, sale and/or distribution of Yasmin and Ocella into the stream of commerce, including a duty to ensure that its products did not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

114.   At all times relevant, Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin and Ocella into the interstate commerce in that Defendants knew or should have known that the products caused such significant bodily harm or death and were not safe for use by consumers.

115.   At all times relevant, Defendants also failed to exercise ordinary care in the labeling of Yasmin and Ocella and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yasmin and Ocella.

116.   Despite the fact that Defendants knew or should have known that Yasmin and Ocella posed serious risks of bodily harm to consumers, Defendants continued to manufacture and market Yasmin and Ocella for use by consumers.

117.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

118.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

119.     As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

120.     Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

121.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

122.     Defendants expressly warranted that Yasmin and Ocella were safe and effective prescription contraceptives.

123.     The Yasmin and Ocella birth control pills manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to consumers when taken in recommended dosages.

124.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

125.    Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

126.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

127.    At the time Defendants designed, manufactured, marketed, sold and distributed Yasmin and Ocella for use by Plaintiff, Defendants knew of the use for which Yasmin and Ocella were intended and impliedly warranted the products to be of merchantable quality and safe for such use.

128.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Yasmin and Ocella were of merchantable quality and safe for their intended use and upon Defendants' implied warranty as to such matters.

129.    Contrary to such implied warranty, Yasmin and Ocella were not of merchantable quality or safe for their intended use, because the products were unreasonably dangerous as described above.

130.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

131.    Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT REPRESENTATION AND/OR FRAUD

132.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

133.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and Ocella and made representations to Plaintiff and her physicians regarding the character or quality of Yasmin and Ocella for guidance in their decision to select Yasmin and Ocella.

134.    Defendants represented that their products were just as safe or safer, and just as effective or more effective, than other birth control products on the market.

135.    Defendants' representations regarding the character or quality of Yasmin and Ocella were false.

136.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its products Yasmin and Ocella created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

137.    Defendants intentionally and/or negligently misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its products as safe in order to avoid losses and sustain profits in sales to consumers.

138.    Plaintiff and her physicians reasonably relied upon, to Plaintiff's detriment, Defendants' representations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the products.

139.    Plaintiff and her physicians reasonably relied upon, to Plaintiff's detriment, Defendants' representations to Plaintiff and/or her health care providers that Yasmin and Ocella

were safe for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the products.

140. As a direct and proximate result of Defendants' fraudulent and/or negligent misrepresentations and/or omissions, Plaintiff used Yasmin and Ocella and Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

141. As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

142. Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT

143. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

144. As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase and implementation of Yasmin and Ocella by Plaintiff.

145. Defendants have voluntarily accepted and retained those profits and benefits, derived from Plaintiff, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiff was not receiving a product of the quality, nature or fitness that had been represented by Defendants, or that Plaintiff, as a reasonable consumer, expected to receive.

146.    By virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Plaintiff, who is entitled in equity, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

### TENTH CAUSE OF ACTION
### FALSE ADVERTISING

147.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

148.    Defendants knowingly misrepresented Yasmin and Ocella as safe and effective drugs and knowingly made false statements and omissions of material fact concerning the properties, ingredients, characteristics, qualities, benefits, uses, efficacy, safety and/or testing of Yasmin and Ocella to the Plaintiff and the general public.

149.    In its labeling, marketing, direct-to-consumer advertising, promotion, sale and distribution of Yasmin and Ocella, Defendants made untrue, deceptive and/or misleading material assertions, representations and/or statements downplaying risks associated with Yasmin and Ocella and exaggerated the safety of the drugs to Plaintiff and the general public when Defendants had actual knowledge of the serious, adverse health effects associated with Yasmin and Ocella including, but not limited to, deep vein thrombosis, pulmonary embolism, heart attacks, stroke, cholecystitis, cholelithiasis and even death.

150.    Defendants intended to increase the sale and consumption of Yasmin and Ocella by falsely marketing Yasmin and Ocella as safe and effective, and by concealing facts regarding the dangerous propensities of Yasmin and Ocella, to thereby induce Plaintiff's physicians to

prescribe Yasmin and Ocella and to ultimately cause Plaintiff to purchase and consume Yasmin and Ocella.

151.    In purchasing and consuming Yasmin and Ocella, Plaintiff reasonably relied upon Defendants' false and misleading assertions and omissions of material fact that Yasmin and Ocella were safe and effective.

152.    As a direct and proximate result of Defendants' false statements as herein alleged, Plaintiff ingested Yasmin and Ocella and suffered severe and debilitating injuries and economic loss, including but not limited to, cost of medical care, rehabilitation, lost income, permanent health conditions and pain and suffering.

153.    As a direct and proximate result of the foregoing, Plaintiff is entitled to damages pursuant to the common law and applicable state statutes.

154.    Defendants' conduct, as described above, risked the lives of the consumers and users of their products, including Plaintiff, and was committed oppressively, fraudulently, maliciously and/or with gross negligence so as to warrant the imposition of punitive damages.

## ELEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES

155.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

156.    At all times material hereto, the Defendants knew or should have known that Yasmin and Ocella were inherently more dangerous with respect to the risks of deep vein thrombosis, pulmonary embolism, heath attacks, stroke, cholecystitis, cholelithiasis and even death than other birth control medications.

157.    At all times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety and efficacy of Yasmin and Ocella.

158.    Defendants' misrepresentations included intentionally withholding material information from the medical community and the public, including Plaintiff, regarding the safety of Yasmin and Ocella.

159.    Notwithstanding the foregoing, Defendants continued to aggressively market Yasmin and Ocella to consumers, including Plaintiff, without disclosing the aforesaid side effects when there were safer alternative birth control medications.

160.    The Defendants knew of Yasmin and Ocella's defective and unreasonably dangerous natures, as set forth herein, but continued to design, develop, manufacture, market, distribute and sell them so as to maximize sales and profits at the health and safety of the public, including Plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused by Yasmin and Ocella.

161.    Defendants fraudulently, intentionally and/or recklessly concealed and failed to disclose to the public, including Plaintiff, the potentially life threatening side effects of Yasmin and Ocella in order to ensure continued and increased sales.

162.    Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of the necessary information to enable Plaintiff to weigh the true risks of using Yasmin and Ocella against the benefits.

163.    The aforesaid conduct of Defendants in the license, approval process, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Yasmin and Ocella was fraudulent, knowing misconduct, willful and/or conduct undertaken recklessly and with conscious disregard for the safety of Plaintiff such as to constitute despicable conduct, and oppression, fraud and malice, and at all times relevant, such conduct was ratified by the corporate Defendants herein, thereby entitling Plaintiff to punitive

damages in an amount appropriate to punish and set an example to Defendants, and to deter them from similar conduct in the future.

164.    Plaintiff seeks actual and punitive damages from the Defendants as alleged herein pursuant to all appropriate state statutes and common law.  The injuries and damages alleged herein are permanent and will continue into the future.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

1.    Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all her injuries and damages, both past and present;

2.    Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent health conditions and pain and suffering.

3.    Double or triple damages as allowed by law;

4.    Attorneys' fees, expenses and costs of this action;

5.    Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

6.    Such further relief as this Court deems necessary, just and proper.

7.    Punitive damages in excess of twice the compensatory damages award.

RESPECTFULLY SUBMITTED,


/s/TaKeena M. Thompson
Gregory L. Laker, Esq.
Attorney No. 10322-49
glaker@cohenandmalad.com
TaKeena M. Thompson, Esq.
Attorney No. 28807-53
tthompson@cohenandmalad.com



**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone:  (317) 636-6481
Facsimile:  (317) 636-2593
*Attorneys for Plaintiff*


## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims asserted in this Complaint.

/s/TaKeena M. Thompson
TaKeena M. Thompson, Esq.
Attorney No. 28807-53